IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. SA-13-CV-00310-DAE |
| TEJAS CONCRETE & MATERIALS INC., BALLENGER UNITED DEVELOPMENT LTD., VAL-TEX ASPHALT & ENVIRONMENTAL RECYCLING INC., JOE C. BALLENGER SR., and JOE C. BALLENGER JR., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) DENYING DEFENDANTS' RULE 12(b)(3) MOTIONS TO
DISMISS; (2) DENYING DEFENDANTS' RULE 12(b)(6) PARTIAL MOTIONS
TO DISMISS; (3) DENYING DEFENDANT JOE C. BALLENGER SR.'S
<u>MOTION TO TRANSFER VENUE</u>

On October 30, 2013, the Court heard oral argument on the Rule

12(b)(3) Motion to Dismiss (Dkt. # 6) brought by Defendant Joe C. Ballenger, Sr.

("Ballenger, Sr.") and the Rule 12(b)(3) Motion to Dismiss (Dkt. # 12) brought by

Defendants Joe C. Ballenger, Jr., Tejas Concrete & Materials, Inc., Ballenger

United Development LTD., and Val-Tex Asphalt & Environmental Recycling Inc.

(collectively, "Ballenger, Jr. Defendants").  The Court also heard the Rule 12(b)(6)

Partial Motions to Dismiss brought by the Ballenger, Jr. Defendants and

Defendant Ballenger, Sr.  (Dkt. ## 7, 11.)  Also before the Court is Defendant

Ballenger, Sr.'s Motion to Transfer Venue.  (Dkt. # 32.)  Marshall R. Ray, Esq.,

George Baldwin, Esq., and Robert Carson Fisk, Esq., appeared at the hearing on

behalf of Defendants.  Christopher R. Ward, Esq., appeared on behalf of Plaintiffs

Zurich American Insurance Company, Fidelity and Deposit Company of

Maryland, and Colonial American Casualty and Surety Company (collectively,

"Plaintiffs").  After reviewing the motions and the supporting and opposing

memoranda, the Court **DENIES** Defendants' Rule 12(b)(3) Motions to Dismiss

(Dkt. ## 6, 12), **DENIES** Defendants' Rule 12(b)(6) Partial Motions to Dismiss

(Dkt. ## 7, 11), and **DENIES** Ballenger, Sr.'s Motion to Transfer Venue (Dkt. #

32).

BACKGROUND

I.    Factual and Procedural Background

On April 15, 2009, Defendants, together with Ballenger Construction,

2

Inc. ("Ballenger Construction"), executed an Agreement of Indemnity in favor of Plaintiffs in consideration for certain surety bonds. (Dkt. # 1 ¶ 11.) Plaintiffs issued several performance and payment bonds ("the Bonds"), which named Ballenger Construction Co. as principal on nine construction projects to be completed in the State of Texas ("the Projects"). (Id. ¶ 12.)

Unpaid subcontractors and suppliers on the Projects have made numerous claims on the Bonds, and Plaintiffs aver that this has caused Plaintiffs "to incur substantial losses and expenses." (Id. ¶ 13.) As a result, Plaintiffs have "demanded that Defendants exonerate and indemnify" Plaintiffs for their losses relating to the Bonds, "but Defendants have wholly failed and refused to do so." (Id. ¶ 15.)

On April 15, 2013, Plaintiffs filed suit against Defendants in this Court, bringing claims for (1) breach of the Agreement of Indemnity; (2) collateralization of Defendants' assets; (3) equitable exoneration; (4) violations of Chapter 162 of the Texas Property Code; and (5) an accounting. (See id. ¶¶ 16–40.) Plaintiffs also seek to recover attorneys' fees, costs, and interest. (Id. ¶¶ 41–45.)

On May 10, 2013, Defendant Ballenger, Sr. filed a Motion to Dismiss pursuant to Rule 12(b)(3), asserting that venue is improper in the United States

District Court for the Western District of Texas.  (Dkt. # 6.)  Ballenger, Sr. also filed a Partial Motion to Dismiss pursuant to Rule 12(b)(6), asking the Court to dismiss Plaintiffs' claims brought under Chapter 162 of the Texas Property Code. (Dkt. # 7.)  On May 21, 2013, the Ballenger, Jr. Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(3) and a Partial Motion to Dismiss pursuant to Rule 12(b)(6).  (Dkt. ## 11, 12.)  On May 24, 2013, Plaintiffs filed responses in opposition to the Motions to Dismiss.  (Dkt. ## 14, 15.)  On May 31, 2013, Defendants filed replies in support of their motions.  (Dkt. ## 23, 24, 25.)

On July 12, 2013, Ballenger, Sr. filed a Motion to Transfer Venue, asserting that venue is "clearly more convenient" in the United States District Court for the Southern District of Texas, Brownsville Division.  (Dkt. # 32.)  On July 19, 2013, Plaintiffs filed a response in opposition to the motion.  (Dkt. # 34.) On August 30, 2013, Ballenger, Sr. filed a Supplement to Motion to Transfer Venue.  (Dkt. # 36.)

## II.   Related Litigation

### A.   Bankruptcy of Ballenger Construction

On December 7, 2012, Ballenger Construction[1] filed for bankruptcy

---

[1]  Ballenger Construction is not a defendant in this case, but was a party to the Agreement of Indemnity.

under Chapter 11 of the United States Bankruptcy Code in the United States
Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.
(Dkt. # 31-1.)  The petition is signed by Defendants Ballenger, Sr. and Ballenger,
Jr.  (Id.)  Ballenger, Sr. is the CEO of Ballenger Construction and Ballenger, Jr. is
the President of Ballenger Construction.  (Id.)

Two of the plaintiffs in the instant case, Colonial American Casualty
and Surety Company ("Colonial") and Fidelity and Deposit Company of Maryland
("Fidelity") have entered an appearance in the bankruptcy action.  (Dkt. # 32-2.)
Additionally, Plaintiff Zurich American Insurance Company ("Zurich") has filed
several notices of intent to conduct a Rule 2004 examination and issued several
subpoenas duces tecum in the bankruptcy action.  (Dkt. # 32-3.)  One of the
examinations was to be held in Austin, Texas at the law offices of Zurich's
counsel in the bankruptcy action.  (Id.)

On December 31, 2012, Ballenger Construction removed to federal
court a case filed against it by Cameron County Regional Mobility Authority in
the 445th Judicial District Court of Cameron County, Texas.  (Dkt. # 32-12.)  The
parties agreed to transfer the case to the United States Bankruptcy Court for the
Southern District of Texas.  (Dkt. # 32-13.)

On January 3, 2013, Ballenger Construction removed to federal court

5

a case filed against it by FED Investments Inc. in the 166th Judicial District Court

of Bexar County, Texas.  (Dkt. # 32-14.)  Following a status conference, the

bankruptcy judge in United States Bankruptcy Court for the Western District of

Texas ordered that the action be transferred to the Southern District of Texas.

(Dkt. # 32-15.)

      B.    <u>Actions Brought by Liberty Mutual Insurance Company</u>

        Liberty Mutual Insurance Company ("Liberty") also served as a

surety and issued payment bonds to Ballenger Construction and several defendants

in the instant case[2] (collectively, the "Liberty Defendants").  (Dkt. # 32-16.)  On

March 1, 2013, Liberty filed suit against the Liberty Defendants in the United

States District Court for the Northern District of Texas, bringing claims for breach

of the indemnity agreement, equitable exoneration, and collateralization.  (<u>Id.</u>)

Ballenger, Sr. filed a Motion to Transfer Venue based on 28 U.S.C. § 14.04(a),

which the court granted on July 3, 2013.  (Dkt. # 32-17.)  The case was transferred

to the Southern District of Texas, Brownsville Division.  (<u>Id.</u>)

        On April 5, 2013, Liberty filed a lawsuit against Ballenger

Construction's accountant in the United States District Court for the Southern

---

[2] Parties to the payment bonds included Defendants Ballenger, Sr., Ballenger, Jr. and Val-Tex Asphalt & Environmental Recycling, Inc.  (Dkt. # 32-16.)

District of Texas, McAllen Division, asserting a claim for negligent

misrepresentation.  (Dkt. # 32-18.)

    C.    Action Involving Zurich Construction

        On April 30, 2013, CEMEX Material South L.L.C. ("CEMEX") filed

a lawsuit against Ballenger Construction and Plaintiffs in the United States

District Court for the Southern District of Texas, Brownsville Division.  (Dkt.

# 32-19.)  CEMEX brings claims relating to one of the nine Projects for which

Plaintiffs had issued a performance and payment bond.  (See id.)

    D.    Bankruptcy of Val-Tex

        On August 23, 2013, Defendant Val-Tex Asphalt & Environmental

Recycling, Inc. ("Val-Tex") filed for bankruptcy under Chapter 11 of the United

States Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of Texas, Brownsville Division.  (Dkt. # 36-1.)

STANDARD OF REVIEW

I.    Rule 12(b)(3)

        A party may move to dismiss an action based on improper venue

pursuant to Rule 12(b)(3).  See Fed. R. Civ. P. 12(b)(3).  Once a defendant

challenges venue, the plaintiff has the burden of demonstrating that the chosen

venue is proper.  Am. Gen. Life Ins. Co. v. Rasche, 273 F.R.D. 391, 396 (S.D.

7

Tex. 2011) (citation omitted).  "On a Rule 12(b)(3) motion to dismiss for improper

venue, the court must accept as true all allegations in the complaint and resolve all

conflicts in favor of the plaintiff."  Braspetro Oil Servs. Co. v. Modec (USA), Inc.,

240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted).  Thus, a

plaintiff may show that venue is proper by "setting forth facts that taken as true

would establish venue."  Bigham v. Envirocare of Utah, Inc., 123 F. Supp. 2d

1046, 1048 (S.D. Tex. 2000) (citing Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.

1994)).

       If venue is improper,  28 U.S.C. § 1406(a) instructs district courts to

"dismiss, or if it be in the interest of justice, transfer such case to any district or

division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision

to dismiss or transfer lies within the court's discretion.  AllChem Performance

Prods., Inc. v. Aqualine Warehouse, LLC, 878 F. Supp. 2d 779, 788 (S.D. Tex.

2012) (citing Dubin v. United States, 380 F.2d 813, 815 (5th Cir. 1967)).

II.    Rule 12(b)(6)

       Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state

a claim upon which relief can be granted."  Review is limited to the contents of the

complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to

dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory

allegations." <u>Tuchman v. DSC Commc'ns Corp.</u>, 14 F.3d 1061, 1067 (5th Cir.

1994); <u>see also</u> <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005) ("We

do not accept as true conclusory allegations, unwarranted factual inferences, or

legal conclusions.").

III.   <u>28 U.S.C. § 1404(a)</u>

         Under 28 U.S.C. § 1404(a), a court may transfer an action to any

other proper judicial district "[f]or the convenience of the parties and witnesses, in

the interest of justice."   The party seeking transfer of venue must show good cause

for the transfer.   <u>In re Volkswagen of Am., Inc.</u>, 545 F.3d 304, 315 (5th Cir. 2008)

(en banc) ("<u>Volkswagen II</u>").   The moving party must show that transfer is "clearly

more convenient."   <u>Id.</u>   Otherwise, a plaintiff's choice of venue must be respected.

<u>Id.</u>

         When deciding whether to transfer venue, a court balances the private

interests of the litigants and the public's interest in the fair and efficient

administration of justice.   The Fifth Circuit has adopted the private and public

interest factors first announced in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947), a

<u>forum non conveniens</u> case, "as appropriate for the determination of whether a

§ 1404(a) venue transfer is for the convenience of parties and witnesses and in the

interest of justice."  <u>Volkswagen II</u>, 545 F.3d at 315 (citing <u>Humble Oil &</u>

<u>Refining Co. v. Bell Marine Serv., Inc.</u>, 321 F.2d 53, 56 (5th Cir. 1963)).

   The private interest factors are: "(1) the relative ease of access to

sources of proof; (2) the availability of compulsory process to secure the

attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4)

all other practical problems that make trial of a case easy, expeditious and

inexpensive."  <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004)

("<u>Volkswagen I</u>") (citing <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 241 n.6 (1981)).

The public interest factors are: "(1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at

home; (3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws [or in] the

application of foreign law."  <u>Id.</u>  The Fifth Circuit has explained that none of these

factors "can be said to be of dispositive weight."  <u>Action Indus., Inc. v. U.S. Fid.</u>

<u>& Guar. Corp.</u>, 358 F.3d 337, 340 (5th Cir. 2004).  "[Section 1404(a)] is intended

to place discretion in the district court to adjudicate motions for transfer according

to an 'individualized, case-by-case consideration of convenience and fairness.'"

<u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (quoting <u>Van Dusen v.</u>

<u>Barrack</u>, 376 U.S. 612, 622 (1964)).

11

<u>DISCUSSION</u>

I.     <u>Motions to Dismiss for Improper Venue</u>

Defendants bring motions to dismiss under Rule 12(b)(3), arguing

that venue is improper in the Western District of Texas.  (Dkt. ## 6, 12.)  More

specifically, Defendants argue that a "substantial part" of the events that form the

basis of Plaintiffs' claims transpired outside this district.

Pursuant to 28 U.S.C. § 1406(a), a court may dismiss or transfer a

case if it has been filed in the "wrong" division or district.  28 U.S.C. § 1406(a).

According to 28 U.S.C. § 1391(b), venue is proper in a diversity action in:

> (1) a judicial district in which any defendant resides, if all defendants are
> residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as
> provided in this section, any judicial district in which any defendant is
> subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiffs assert venue is proper in this Court pursuant to 28 U.S.C.

§ 1391(b)(2), alleging that a substantial part of the events giving rise to the claim

occurred in the Western District.  (Dkt. #1 ¶ 10.)  Defendants first argue that venue

12

is improper because Plaintiff's claims concern the alleged failure of the Defendants to reimburse Plaintiffs and, thus, such failures would have occurred where the Defendants allegedly failed to reimburse.  According to Defendants, because Defendants reside in the Southern District, venue is proper there and improper in this District.  (Dkt. # 6 at 4.)  However, according to Plaintiffs' complaint, Defendant Joseph C. Ballenger, Jr. resides at 184 Riverwood, Boerne, Texas 75006, which is located in Kendall County—within the boundaries of the Western District of Texas, San Antonio Division.  (Dkt. #1 ¶ 7.)  Therefore, even assuming Defendants' argument that venue is where Defendants reside and failed to reimburse, at least one Defendant resides in the Western District—making venue proper under 28 U.S.C. § 1391(b)(1) and defeating Defendants' argument.

Pursuant to the Agreement of Indemnity, Defendants promised to exonerate and indemnify Plaintiffs for losses on the Projects.  A promise to exonerate a surety creates in the promisor "a duty to perform the underlying obligation at the time the performance is due."  Restatement (3d) of Suretyship & Guar. (1996) § 21 cmt. i.  Thus, the Agreement of Indemnity required Defendants to ensure completion of the Projects, a third of which were located in counties within the Western District of Texas.  According to Plaintiffs, Defendants had a duty to pay the subcontractors and suppliers who performed work on the

13

construction projects, three of which were located in counties within the Western District of Texas.  As a result of Defendants' alleged failure to satisfy these obligations, Plaintiffs assert numerous claims have been made on the Bonds by unpaid contractors and sub-contractors and that this has caused Plaintiffs "to incur substantial losses and expenses."  (Id. ¶ 13.)  Thus, events and omissions giving rise to Plaintiffs' claim occurred in the Western District of Texas, and venue is proper under § 1391(b)(2) because a substantial portion of the events giving rise to this suit occurred in Bexar County, Texas and Hays County, Texas—both of which are located in the Western District of Texas.

Although Defendants concede that three of the projects at issue were located in counties within the Western District, they next assert that because the remaining six construction projects at issue were located in counties within the jurisdiction of the Southern District of Texas, the Southern District is where a "substantial" amount of the events occurred and, therefore, is the proper venue. (Dkt. # 32.)  However, that three of the nine construction projections were located in the Western District of Texas is sufficient to satisfy the "substantiality" requirement of § 1391(b)(2).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the

forum, and not by simply adding up the number of contacts." <u>Daniel v. Am. Bd.</u>
<u>of Emergency Med.</u>, 428 F.3d 408, 432–33 (2d Cir. 2005).  Moreover, the fact that
venue would also be proper in the Southern District of Texas is irrelevant.
According to the Fifth Circuit, "the chosen venue does not have to be the place
where the most relevant events took place," but only where a "substantial" part of
the events or omissions giving rise to the claims occurred.  <u>McClintock v. Sch. Bd.</u>
<u>E. Feliciana Parish</u>, 299 F. App'x 363, 365 (5th Cir. 2008); <u>see also</u> <u>Daniel</u>, 428
F.3d at 432 ("Section 1391(b)(2) does not restrict venue to the district in which the
'most substantial' events or omissions giving rise to a claim occurred.")  Courts
have recognized that "venue may be properly laid in more than one district,"and
the "substantial part of the events or omissions test does not require that the
chosen venue be the <u>best</u> venue . . . the selected district must simply have a
substantial connection to the claim." <u>VP, LLC v. Newmar Corp.</u>, No. 11–2813,
2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012) (internal quotation marks
omitted) (emphasis added).  Accordingly, the Court finds that venue is proper in
this case under § 1391(b)(2).[3]

_____

   [3]The Court notes venue is also proper in this case under § 1391(b)(1).
Under § 1391(b)(1), venue is proper in a district where any defendant resides, if all
the defendants reside in the state where the district is located.  28 U.S.C.
§ 1391(b)(1).  As mentioned above, Joseph C. Ballenger, Jr., resides at 184
Riverwood, Boerne, Texas 75006, which is located in Kendall County—within the

Based on the foregoing, the Court **DENIES** Defendants' Rule 12(b)(3) Motions to Dismiss.

II.     Partial Motions to Dismiss for Failure to State a Claim

Defendants bring partial motions to dismiss under Rule 12(b)(6), arguing that Plaintiffs' claims made pursuant to Chapter 162 of the Texas Property Code should be dismissed.  (Dkt. ## 7, 11.)  More specifically, Defendants argue there is no civil right of recovery under Chapter 162, also known as the Trust Fund Act, because the statute only expressly provides for criminal penalties.

Under the Trust Fund Act, payments made to a contractor or subcontractor under a construction contract for the improvement of real property are considered to be trust funds.  Tex. Prop. Code § 162.001(a).  A trustee misapplies trust funds if it "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust fund."  Id. § 162.031(a).  Criminal penalties are assessed for violations of the Chapter.  See id. § 162.032 (assessing criminal

---

boundaries of the Western District of Texas—and all other Defendants are residents of the State of Texas.  (Dkt. #1 ¶¶ 4–8.)  Ballenger, Jr. also designated his residence in Kendall County as his "homestead" for purposes of obtaining a property tax exemption.  (Dkt. # 28 Ex. A.)

penalties ranging from a Class A misdemeanor to a felony of the third degree for violations). In <u>Dealers Electrical Supply Co. v. Scoggins Construction Co.</u>, 292 S.W.3d 650 (Tex. 2009), the Supreme Court of Texas recognized that a "party who misapplies trust funds under the Trust Fund Act is subject to civil liability to trust-fund beneficiaries whom the Act was designed to protect." <u>Id.</u> at 657 (citing <u>C & G Inc. v. Jones</u>, 165 S.W.3d 450, 453 (Tex. App. 2005)).

Citing <u>Brown v. De La Cruz</u>, 156 S.W.3d 560 (Tex. 2004), Defendants argue that, as a general proposition, there can be no private civil right of recovery under the Trust Fund Act. Defendants direct this Court to the following language from <u>Brown</u> in support of its proposition:

> Several courts of appeals have cited a rule of "necessary implication"—that when a legislative enforcement scheme fails to adequately protect intended beneficiaries, the courts must imply a private cause of action to effectuate the statutory purposes. Some cite at the same time a contradictory rule of strict construction—that causes of action may be implied only when a legislative intent to do so appears in the statute as written. The basis for the former rule appears to be federal cases that have now been abandoned in favor of the latter rule. To the extent that there has been confusion about the Texas rule, we too disapprove of the former in favor of the latter.

<u>Id</u>. at 567.

Defendants now argue that the above language from the Supreme Court of Texas's ruling in <u>Brown</u> provides for a rule of "strict construction," establishing that private civil causes of action are not to be implied in penal

17

statutes absent a clear indication that it was the legislature's intent for such a private right of action to exist.   Therefore, Defendants argue, because there is no statutory provision that expressly allows for civil liability in Chapter 162 of the Texas Property Code, there is no clear legislative intent to create a right to civil damages and, thus, no private civil right of action under the Trust Fund Act.

       In <u>Brown</u>, a purchaser of real property sued the seller under Texas Property Code § 5.102, seeking damages for the seller's failure to timely deliver the deed to the property.  <u>Id.</u> at 562.  Under the former § 5.102, a seller of certain real property was required to record and transfer a deed within thirty days of final payment.  <u>Id.</u> at 563.  Prior to a 2001 amendment, § 5.102 provided that a seller who failed to timely transfer the deed was "subject to a penalty" of up to $500 a day, but did not specify to whom that penalty was due.  Section 5.102 was subsequently amended to state that a seller in violation of the statute was "liable to the purchaser" for "liquidated damages," not "subject to a penalty."  <u>Id.</u> at 564.  Although De La Cruz's case was governed by the pre-amendment version of § 5.102, De La Cruz sought a private cause of action, arguing the amended version of § 5.102 demonstrated the legislature's intent to allow purchasers a private right to recover under the prior statute as well.  The Supreme Court of Texas disagreed, holding the statute provided no private cause of action because there was no clear

legislative intent for such a remedy under the pre-amendment version.  Id. at 567.

The court reasoned:

> [I]f the Legislature had intended merely to clarify who could recover the penalty, the substitution of "liable to the purchaser" would have been sufficient.  Instead, by changing "penalty" to "liquidated damages" and adding a provision for attorney's fees, the Legislature changed not just the recipient but the nature of the amounts assessed.

Id. at 565.

For two reasons, this Court declines to find that the supreme court's holding in Brown forecloses civil liability under the Trust Fund Act.  First, the Brown ruling did not specifically address the Trust Fund Act and did not decide whether a statute only expressly providing for criminal penalties also allows for a private civil right of recovery.  Instead, the Brown ruling addressed a pre-amendment version of a statute of the Texas Property Code and whether that specific statute—providing for a civil statutory penalty, but failing to specify to whom that penalty was due—allowed a private civil cause of action for such penalties.

Second, the Brown decision relied upon by Defendants was issued five years prior to the Supreme Court of Texas's express recognition in Scoggins that a private civil cause of action exists for violations of the Trust Fund Act. Presumably, had the Scoggins court felt that its prior decision in Brown precluded

19

civil liability under Chapter 162 of the Texas Property Code, it would not have found that a private cause of action exists under that chapter.  To determine Texas law, this Court will look to the final decisions of the Supreme Court of Texas on the issue.  <u>Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.</u>, 953 F.2d 985, 988 (5th Cir. 1992).  Here, by its ruling in <u>Scoggins</u>, the Supreme Court of Texas has expressly indicated that a private civil cause of action exists under the Trust Fund Act.

Defendants also argue that Plaintiffs' Chapter 162 claims impermissibly broaden their liability and complicate the case.  However, Plaintiffs are the masters of their complaint and are entitled to assert all viable claims against the Defendants.  <u>See</u> <u>In re Enron Corp. Secs., Derivative & ERISA Litig.</u>, 258 F. Supp. 2d 576, 650 n.32 (S.D. Tex. 2003) ("Plaintiff is the master of its complaint and may assert or not assert claims against its defendants as it chooses, as long as the claims against each defendant satisfy the pleading standards of the relevant law and rules.").  Pursuant to Rule 8(d)(3), "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Moreover, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in

separate ones."  Fed. R. Civ. P. 8(d)(2).  Accordingly, the Court **DENIES**

Defendants' Rule 12(b)(6) Motions to Dismiss.

     III.   <u>Motion to Transfer Venue</u>

          Ballenger, Sr. also brings a Motion to Transfer Venue pursuant to 28

U.S.C. § 1404(a), contending that venue is "clearly more convenient" in the

Southern District of Texas, Brownsville Division.[4]  (Dkt. # 32.)  As discussed in

detail below, an analysis of the public and private interest factors described in

<u>Volkswagen I</u> and <u>Volkswagen II</u> militates against transfer.

     A.   <u>Private Interest Factors</u>

        1.   <u>Relative Ease of Access to Sources of Proof</u>

          Ballenger, Sr. argues that given "the number and significance of

pending actions in the Southern District of Texas," coupled with the fact that many

of the Defendants are located in the Southern District of Texas, access to sources

of proof would be "much easier" upon transfer.  (Dkt. # 32 at 6.)

          Plaintiffs argue that "the location of books and other records is

usually given little weight" in a motion to transfer venue.  (Dkt. # 34 at 5.)

---

[4] "The preliminary question under § 1404(a) is whether a civil action 'might
have been brought' in the destination venue."  <u>Volkswagen II</u>, 545 F.3d at 312.
Plaintiffs seek to transfer this case to the Brownsville Division of the Southern
District of Texas.  The parties agree that this civil action originally could have
been filed in the Brownsville Division.

However, the Fifth Circuit has held that, despite technological advances that have made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis.  Volkswagen II, 545 F.3d at 316.

Here, Ballenger, Sr. fails to explain why the pending actions in the Southern District of Texas are relevant to the easy access to proof in this case. Additionally, although four Defendants are located in the Southern District of Texas, at least one Defendant is based in the Western District of Texas.  And since three of the nine construction projects were located in the Western District of Texas, a significant amount of evidence is presumably also contained in this district.  Where important documents are located in both venues, this factor does not weigh in favor of transfer.  See Metromedia Steakhouses Co. v. BMJ Foods P.R., Cv. No. 3:07-CV-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Jan. 17, 2013) (concluding that factor was neutral because documents were located in both venues).  Thus, because relevant documents and other evidence are located in both this district and the Southern District, the Court concludes this factor is neutral and does not weigh in favor of transfer.

2.   <u>Availability of Compulsory Process to Secure the Attendance of Witnesses</u>

Ballenger, Sr. asserts in a conclusory fashion: "Given that few, if any, potential witnesses involved in the underlying projects are located in this district or even near this district . . . the availability of process to compel the attendance of unwilling witnesses will be impacted."  (Dkt. # 32 at 6.)  Ballenger, Sr. fails, however, to identify any such "unwilling witnesses" and his assertion is belied by the fact that a <u>third</u> of the Projects were located in the Western District of Texas.  <u>See Kimberly-Clark Worldwide, Inc., v. First Quality Baby Prods., LLC.</u>, Cv. No. 3:09-CV-0488-D, 2009 WL 2634860, at *5 (N.D. Tex. Aug. 26, 2009) ("[Defendant] has not identified any witnesses from whom compulsory process will be needed.  It admits that this factor is at best neutral.").

Furthermore, Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena may be served.  The Court's subpoena power is subject to Rule 45(c)(3), which protects non-party witnesses who live or work more than 100 miles from the courthouse.  <u>Volkswagen II</u>, 545 F.3d at 304 (explaining that any "trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)").  However, under Rule 45(c)(3)(C), a subpoena requiring a witness to travel more than 100 miles is

23

still valid if the issuing party shows a substantial need for the testimony and ensures that the witness will be reasonably compensated.  Here, given that the construction projects are physically located more than 100 miles apart from each other, it is inevitable that certain witnesses will have to travel more than 100 miles.  "In general, a transfer should not be made where the only practical effect is to shift inconvenience from the moving party to the non-moving party."  S.E.C. v. Rizvi, No. 4:09-CV-371, 2010 WL 2949311, at *10 (E.D. Tex. July 2, 2010) (citing Sybase, Inc. v. Vertica Sys., Inc., No. 6:08-CV-24, 2008 WL 2387430, at *3 (E.D. Tex. June 9, 2008)).  Because of the geographical distance between the construction projects at issue in this case, resulting in the inevitability that certain witness will have to travel more than 100 miles regardless of whether the case is heard in this district or in the Southern District of Texas, this factor does not weigh in favor of transfer.

        3.    Cost of Attendance for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  Volkswagen I, 371 F.3d at 204–05.  In Volkswagen II, the Fifth Circuit noted that "[a]dditional distance means additional travel time;

24

additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Volkswagen II, 545 F.3d at 317 (internal quotation marks omitted).

Although a defendant can assert that the cost of obtaining the attendance of witnesses will be substantially less in the forum it proposes, courts recognize that the chosen forum is rarely the least expensive venue for every individual affiliated with the case. Bevil v. Smit Ams., Inc., 883 F. Supp. 168, 171 (S.D. Tex. 1995). Again, given that there are likely a substantial number of witnesses in both the Western District of Texas and the Southern District of Texas, "the only practical effect" of transfer would be to impermissibly "shift inconvenience from the moving party to the non-moving party." See Rizvi, 2010 WL 2949311, at *10. Accordingly, the Court concludes this factor does not weigh in favor of transfer.

    4.    Any Other Practical Problems

Ballenger, Sr. argues that if venue is not transferred to the Southern District it will be inconvenient for him to maintain active participation in other cases pending in the Southern District as well as the "significant bankruptcy case" involving Ballenger Construction. (Dkt. #32 at 7.) However, the bankruptcy

proceeding for Ballenger Construction is pending in the Corpus Christi Division of the Southern District of Texas, not the Brownsville Division (where Ballenger, Sr. seeks to have the case transferred).  The Court also notes that Ballenger Construction's bankruptcy counsel is located in the Western District of Texas. Finally, and most importantly, the bankruptcy is not directly related to the factual matters in dispute in this case, because it concerns the debts and liabilities of Ballenger Construction, not the liability of Defendants; Ballenger Construction is not a party to the instant action.

Likewise, the cases involving Liberty are not significantly related to the instant case.  Plaintiffs are parties neither to the Liberty indemnity action nor to Liberty's action against Ballenger Construction's accountants.  Similarly, the case brought by CEMEX against Plaintiffs does not involve any of the Defendants.  Plaintiffs asserted at the hearing there is no possibility of consolidation of the instant case and the cases involving Liberty Mutual.  The pendency of another related litigation is not accorded any weight where there is no "realistic probability" of "consolidating the two cases."  U. S. Fire Ins. Co. v. Aldworth Co., No. Civ. 04-4963(JBS), 2005 WL 1522280, at *5 (D.N.J. June 28, 2005) ("In fact, the pendency of another related litigation need not be given any weight if there is no realistic possibility of consolidating the two cases.").

Although the cases may be related factually, the Court agrees with Plaintiffs that the matters are clearly distinct.  Accordingly, that there is pending litigation in the Southern District of Texas involving Defendants that tangentially relates to the instant case does not weigh in favor of transfer.

      B.     <u>Public Interest Factors</u>

Ballenger, Sr., concedes that the first, third and fourth public interest factors are either not applicable in this case or are neutral.  (Dkt. #32 at 8–10.)

      1.     <u>Administrative Difficulties Flowing From Court Congestion</u>

Ballenger, Sr. concedes this factor is not an issue given similar time frames for case resolution in this district and the Southern District.

      2.     <u>Local Interest In Deciding Localized Controversies</u>

The Court must also consider the local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  <u>Volkswagen I</u>, 371 F.3d at 206.  "[T]he location of the alleged injury is an important consideration in determining how to weigh this factor."  <u>Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.</u>, 867 F. Supp. 2d 859, 872 (E.D. Tex. 2012) (citing <u>In re TS Tech USA Corp.</u>, 551 F.3d 1315, 1321 (Fed. Cir. 2008)).

As described above, this district has an interest in this litigation because a substantial number of the construction projects were located here. As Plaintiffs allege in the Response to Defendant Joe C. Ballenger, Sr.'s Motion to Transfer Venue, Defendants "have failed to adhere to their statutory and contractual trust obligations on the bonded projects in the Western District, to the detriment of numerous subcontractors and suppliers who are located in and/or performed work in the Western District." (Dkt. #34 at 2.) Claims on the bonds at issue have been made in the Western District by claimants located therein. (Id. at Ex. A.) While a number of the construction projects were also located in the Southern District of Texas and that district undoubtedly has an interest in the resolution of the case, this simply means that the communities located in both jurisdictions have an interest in deciding the instant case. Because both forums have a local interest, however, this factor is neutral and does not weigh in favor of transfer.

3.   Familiarity of the Forum with the Governing Law

Ballenger, Sr. concedes that all claims in this case are governed by Texas law. (Dkt. #32 at 10.) Both this district and the Southern District are equally capable of applying Texas state law. Accordingly, this factor does not weigh in favor of transfer.

28

4.   <u>Avoidance of Unnecessary Problems of Conflict of Laws</u>

Neither party asserts an issue regarding conflict of laws that would make either forum more appropriate to decide this case.  Accordingly, this factor does not weigh in favor of transfer.

In sum, Ballenger, Sr. has not shown "good cause" for transfer of the instant case to the Southern District of Texas or that the Southern District of Texas would constitute a "<u>clearly</u> more convenient" venue.[5]   The Court agrees that given the pending cases in the Southern District venue would perhaps be more convenient to Defendants; however, the moving party's burden is to "clearly demonstrate that a transfer is '[f]or the convenience <u>of parties and witnesses</u>, in the interest of justice.'" <u>Volkswagen II</u>, 545 F.3d at 314 (quoting 28 U.S.C. § 1401(a)) (emphasis added).  After an analysis of all the private and public interest factors,

---

[5]Ballenger, Sr., directs the Court to an order issued by the Northern District of Texas granting Defendants' motion to transfer venue to the Southern District (Dkt. # 32 Ex. 9.) in the factually similar case filed against Defendants by Liberty Mutual Insurance Company.  However, in that case, none of the Defendants or projects giving rise to Liberty Mutual's claims were located in the Northern District.  Therefore, Defendants met the burden of demonstrating venue was "clearly more convenient" in the Southern District than in the Northern District and, thus, transfer was warranted.  Defendants could have presumably shown venue was clearly more convenient in the Western District as well, given the number of the Projects that occurred in this district.  The Court finds the facts in the instant case distinguishable from those presented to the Northern District as outlined in that court's order and therefore disagrees with Ballenger, Sr. that the Northern District's order lends support to his motion before this Court.

the Court finds Ballenger, Sr. has not met his burden of showing venue is clearly more convenient in the Southern District for all parties and witnesses.  "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  Volkswagen II, 545 F.3d at 315.  The Court therefore **DENIES** Ballenger, Sr.'s Motion to Transfer Venue.

CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Rule 12(b)(3) Motions to Dismiss (Dkt. ## 6, 12), **DENIES** Defendants' Rule 12(b)(6) Partial Motions to Dismiss (Dkt. ## 7, 11), and **DENIES** Ballenger, Sr.'s Motion to Transfer Venue (Dkt. # 32).

IT IS SO ORDERED.

DATED: San Antonio, Texas, November 6, 2013.

_____
David Alan Ezra
Senior United States District Judge

30